IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAULA J.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:22-cv-00002-HZ

OPINION & ORDER

Bruce Brewer
PO Box 421
West Linn, Or 97068

    Attorney for Plaintiff

Kevin Danielson
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

L. Jamala Edwards
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Paula J. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for payment of benefits.

## PROCEDURAL BACKGROUND

    Plaintiff applied for DIB on July 12, 2019, alleging an onset date of June 14, 2019. Tr. 90.[2] Plaintiff's date last insured ("DLI") is December 31, 2023. Tr. 90. Her application was denied initially and on reconsideration. Tr. 110, 116.

    On February 17, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 42. On April 2, 2021, the ALJ found Plaintiff not disabled. Tr. 35. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

    Plaintiff alleges disability based on "chronic migraines; arthritis both knees, hands, ankle, back; knee replacement, right, needs to be redone; anxiety day and night; GIRD." Tr. 214. At the time of her alleged onset date, she was 58 years old. Tr. 71. She has past relevant work experience as a school secretary. Tr. 34.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

**SEQUENTIAL DISABILITY EVALUATION**

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to

the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 25. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease and facet arthropathy of the lumbar spine; osteoarthritis of the left knee; insomnia; chronic migraine; and obesity." Tr. 25. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 28. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a reduced range of light work as defined in 20 C.F.R. §§ 404.1567(b) with the following limitations:

> [C]laimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. She can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, and she can occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. She can tolerate no exposure to hazards.

Tr. 28. Despite these limitations, the ALJ concluded that Plaintiff could perform her past relevant work as a school secretary, both as generally performed in the national economy and as actually performed by Plaintiff. Tr. 34–35. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 35.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) rejecting Plaintiff's subjective symptom testimony; (2) improperly rejecting the medical opinions of Dr. Sullivan and Dr. Schaben; and (3) rejecting the testimony of lay witness Tyler Reeser.[3] Pl. Br., ECF 11. The Court agrees.

**I.    Subjective Symptom Testimony**

Plaintiff argues the ALJ erred in rejecting her subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p. The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce

---

[3] Plaintiff focuses her argument on her migraines. *See* Pl. Br. Accordingly, the Court does not address the ALJ's analysis of Plaintiff's other impairments.

5 – OPINION & ORDER

the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff last worked in 2019 as a school secretary. Tr. 52. She testified that she stopped working because her migraines increased in frequency and began occurring at night, which prevented her from sleeping and inhibited her ability to concentrate and perform her job duties the next day. Tr. 51, 61. Plaintiff's employer was understanding and accommodated her when she was experiencing the effects of a migraine. Tr. 52. She would often have to leave work to take medication or seek treatment, or she would go to the sickroom to lie down. Tr. 52. Plaintiff testified that she loved her job and the people she worked with, so she worked, despite her migraines in 2018 and 2019, to support her grandson and aging parents. Tr. 61. But after talking

with her primary care doctor in the spring of 2019—who told her she was going to get sicker if she did not stop—she realized she needed to stop working. Tr. 61–62.

Plaintiff experiences approximately twenty debilitating migraines per month, many of which occur at night. Tr. 53, 233. At night, the migraines wake her up and require treatment—such as medication or an ice helmet—but do not subside until hours later. Tr. 53, 233. Sometimes, she has to take morphine or dilaudid to help her sleep, but then her husband has to keep an eye on her because of the strength of the medications. Tr. 53. The day after a migraine, she is exhausted and sick, unable take care of her daily tasks. Tr. 53–54, 233. On days where Plaintiff cannot take care of her activities of daily living—which include taking care of her twelve-year-old grandson, personal care, preparing meals, and house or yardwork—her husband steps in and helps. Tr. 54–55, 234–36. Plaintiff's ability to take care of finances, engage in hobbies, and socialize are all limited because of her migraines. Tr. 237. Her migraines also affect her sight, concentration, and ability to follow instructions. Tr. 58, 60, 238.

Plaintiff has exhausted treatment options for her migraines and has enrolled in clinical trials to try to find something to prevent or control the pain. Tr. 55–56. Gabapentin worked for a short two-week period. Tr. 57. She had success in the past with Imitrex and was taking it five times a week to treat her headaches. Tr. 56. But it causes intense side effects, and she cannot take it anymore. Tr. 56. Specifically, Plaintiff testified that Imitrex increases her risk of a stroke, and it makes her tired, foggy, and dizzy. Tr. 56. She has to sleep when she takes it. Tr. 56.

The ALJ gave three reasons for rejecting Plaintiff's subjective symptom testimony: (1) Plaintiff's activities of daily living; (2) Plaintiff's work history, including her ability to work despite her conditions; and (3) lack of support from the objective medical evidence.

///

A.     Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ cited Plaintiff's daily activities in discounting her subjective symptom testimony. Tr. 30–31. He noted that she reported raising her grandchild. Tr. 30. He also cited her reports to providers that she could walk and ride her electric bike daily and cook. Tr. 30–31.

The ALJ's findings are not supported by substantial evidence. As Plaintiff described at the hearing and in her function report, Plaintiff's level of functioning depends on whether she has a migraine. When she has a migraine, she is debilitated and requires significant assistance from her husband in taking care of her personal needs, caring for her grandson, and many other activities of daily living. When she does not have a migraine, Plaintiff is "pretty functional" and

can cook, clean, spend time with her grandson, and engage in some of her hobbies. Tr. 54, 234–38. Given that Plaintiff's level of functioning varies depending on her migraines, isolated reports of her activities to providers do not reasonably undermine Plaintiff's subjective symptom testimony. The ALJ's reasoning was not clear or convincing.

    B.    Work History

The ALJ may consider work that a claimant engaged in—regardless of whether that work amounted to substantial gainful activity—in making his disability determination. *See* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). "In weighing a claimant's credibility, the ALJ may consider . . . inconsistencies . . . between his testimony and . . . his work record . . . ." *Light v. Soc. Sec. Admin.* 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may also discount a claimant's credibility where the alleged impairment is not the reason that the claimant stopped working. *See Tommasetti*, 533 F.3d at 1040 (affirming credibility decision where the claimant testified his diabetes was not disabling, was controlled by medication, and was not the reason he stopped working); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (The plaintiff's pain allegations were not credible where the plaintiff reported at the hearing and to a doctor that he left the job because he was laid off, not because he was injured.). And, under some circumstances, an ALJ may reject allegations of disabling limitations when a claimant's impairment is of longstanding duration, did not prevent them from working in the past, and there is no evidence of significant worsening of symptoms during the relevant period. *Gregory v. Bowen*, 844 F.2d 664, 667 (9th Cir. 1988); SSR 84-25 ("[A] severely impaired person may have worked under conditions especially arranged to accommodate his or her impairment or may have

worked through an unusual job opportunity, such as a sheltered workshop."); 20 C.F.R. §§ 404.1573, 416.973.

The ALJ gave two reasons related to Plaintiff's past work for rejecting her subjective symptom testimony. First, the ALJ found that "[d]espite her complaints of frequent, severe migraines, the claimant was able to continue working through the end of the school year in June 2019." Tr. 29. Specifically, the ALJ emphasized that Plaintiff's subjective reports in the medical record from 2017 show migraines with the same frequency and severity as the migraines she described at the hearing, and noted Plaintiff was able to work full-time as a school secretary through the end of the 2019 school year. Tr. 30, 31. Second, the ALJ expressed doubt about the reason Plaintiff stopped working, noting that it coincided with the end of the school year rather than a medical reason. Tr. 29–30. The ALJ also noted that Plaintiff told a provider she was planning on moving close to her mother and sister soon after she stopped working, which "indicates a reason unrelated to medical conditions for the cessation of work." Tr. 30.

The ALJ erred. Plaintiff's testimony, reports in the medical records, and a letter from Plaintiff's employer all explain how Plaintiff was able to continue working through the end of the school year despite her condition. *See Franz v. Colvin*, 91 F.Supp.3d 1200, 1209 (D. Or. Feb. 11, 2015) (finding the ALJ erred in discrediting plaintiff for inconsistencies between work history and alleged onset date where "facts in the record . . . sufficiently explain the discrepancy"). Plaintiff had an accommodating supervisor, was frequently absent, and took frequent breaks while she was working. Tr. 52, 263. As one doctor noted: "She has been a hard-charger all her life, but her headaches are to the point that she cannot continue working and when she completes this school year on 6/15/2019, she realizes she cannot work any longer." Tr. 377.

10 – OPINION & ORDER

The ALJ also erred in finding that Plaintiff did not stop working for a medical reason. The April 2019 chart note cited by the ALJ states, in relevant part:

> She is quite frustrated about ongoing chronic migraine, more than 20 episodes per month, which affected her work and quality of life. She resigned from her job (secretary at the school district) recently and will finish her contract in about one month.
>
> She and her husband are moving to Bend, OR, this summer, close to her mother and sister.

Tr. 416 (cleaned up). A month later, she explained to another provider that "her headaches are to the point that she cannot continue working and when she completes the school year on 6/15/2019, she realizes she cannot work any longer." Tr. 377. In the context of the record as a whole, Plaintiff's comment to a provider that she is moving closer to family does not suggest, as the ALJ implies, that Plaintiff stopped work for a reason unrelated to her medical condition. This is not a clear or convincing reason for rejecting Plaintiff's testimony.

    C.    Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding where the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The ALJ may also take into account the effectiveness of any treatment. *See Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication."). And under certain

11 – OPINION & ORDER

circumstances, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson,* 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective, physical basis by claimant's treating physician."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). However, this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

Throughout his discussion of Plaintiff's subjective symptom testimony, the ALJ notes various medical findings. Tr. 29–31. For example, the ALJ cites clinical examinations showing "unremarkable findings" and "no neurological deficits." Tr. 29–30. And despite acknowledging that there is often no objective evidence of migraines as discussed in Social Security Ruling ("SSR") 19-4p, the ALJ concluded that "the normal clinical findings directly contradict the claimant's allegations regarding debilitating residual effects from migraines that prevent her from working" and "treatment records show consistently normal neurological findings and mental status examinations."[4] Tr. 31.

Here, the ALJ erred. First, the Court notes that this is the sole remaining reason for rejecting Plaintiff's subjective symptom testimony. Second, Plaintiff's normal neurological findings and normal mental status exams do not cast doubt on Plaintiff's claims. SSR 19-4p

---

[4] The ALJ also discusses Plaintiff's success with Imitrex and gabapentin in his decision. Tr. 30. But he also acknowledged that this success was temporary. Tr. 30. Accordingly, the Court does not consider Plaintiff's treatment history or her temporary periods of improvement as reasons the ALJ provided for discounting Plaintiff's testimony.

12 – OPINION & ORDER

provides guidance on evaluating cases involving primary headache disorders, including migraines. In determining a Plaintiff's RFC, adjudicators are instructed to focus on whether the impairment-related symptoms are consistent with the evidence in the record. SSR 19-4p. The Ruling also describes the diagnostic criteria for migraines, which include at least five headache attacks lasting four to seventy-two hours that are unilateral, pulsating, moderate or severe, or aggravated by routine physical activity and cause nausea or vomiting, or photophobia or phonophobia. *Id.* Nowhere does the Ruling describe abnormal neurological findings or mental status examinations—or any difficulties in neurological functioning—for the diagnosis or evaluation of migraine headaches.

Finally, Plaintiff consistently reports the same symptoms to her providers that she describes in her testimony. In December 2017, she described having headaches approximately twenty times per month but noted that they were now almost all occurring at night. Tr. 388. Over the next year, she consistently reported these symptoms to providers. She reported frequent ER visits and headaches at night, which affected her work and quality of life. Tr. 377, 443, 446, 415–16. In early 2019, she told a neurologist that she has a seventeen-year history of chronic migraines that have not be controlled by various medications. Tr. 415. In May 2019, Plaintiff told a doctor that she had slept only two to four hours the previous night due to a migraine. Tr. 377. Once she moved to Oregon and established care with new providers, she continued to report having about twenty headaches per month, requiring Imitrex or opioids for treatment. Tr. 472. Her neurologist told her to stop taking the Imitrex due to analgesic overuse. Tr. 555. She continued reporting most of her headaches occurring at night, often waking her up from sleep. Tr. 555, 725, 759. Plaintiff told her providers that her migraines cause severe pain, routinely prevent her from being present or focused, and are sometimes associated with nausea or

vomiting. Tr. 725. This evidence is consistent with Plaintiff's testimony at the hearing and descriptions in her function report. Thus, the ALJ erred in rejecting Plaintiff's subjective symptom testimony.

## II.  Medical Opinion Evidence

Plaintiff argues that the ALJ erred in rejecting the opinions of Dr. Sullivan and Dr. Schaben. For applications filed on or after March 27, 2017, ALJs are not required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing

an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

Dr. Sullivan has been Plaintiff's primary care physician since October 11, 2019. At the time that he completed his "headaches medical source statement" in support of Plaintiff's application, he had seen Plaintiff six times. Tr. 713. He diagnosed her with chronic migraines without aura, the symptoms of which consist of vertigo, nausea, malaise, photophobia, throbbing pain, inability to concentrate, impaired sleep, exhaustion, phonophobia, mood changes, confusion, and impaired appetite. Tr. 713. Her symptoms are worse with activity. Tr. 713. According to Dr. Sullivan, Plaintiff has approximately five headaches per week that typically last eight hours. Tr. 713. Lack of sleep is a trigger for Plaintiff's migraines. Tr. 714. Bright lights, moving around, noise, and coughing/straining make them worse. Tr. 714. According to Dr. Sullivan, Plaintiff would need to take frequent, unscheduled, lengthy breaks during the workday. Tr. 715. She would miss more than four days of work per month and be "off task" more than 25% of the time. Tr. 715.

Dr. Schaben has been Plaintiff's treating neurologist since January 7, 2020. Tr. 754. In her "headaches medical source statement," she diagnosed Plaintiff with migraines and chronic daily headaches. Tr. 754. Plaintiff has approximately twenty headaches per month that can last from a few hours to all day. Tr. 754. The intensity of her headaches varies from mild to severe and is associated with nausea, malaise, throbbing pain, weight change, inability to concentrate, impaired sleep, exhaustion, and impaired appetite. Tr. 754. They are worse with activity. Tr. 754. Bright lights, hunger, lack of sleep, noise, and stress can trigger migraines, and bright lights, moving around, and noise can make them worse. Tr. 755. The only things that make Plaintiff's headaches better are lying down, taking medication, spending time in a quiet and dark place, and

cold packs. Tr. 755. Dr. Schaben opined that Plaintiff's headache condition is lifelong and incurable. Tr. 756. Plaintiff would need to take episodic breaks more than fifteen days per month. Tr. 756. Dr. Schaben also opined that Plaintiff would miss more than four days of work per month and be "off task" at work 25% or more of the time. Tr. 756.

The ALJ rejected the opinions of Dr. Sullivan and Dr. Schaben for two reasons. First, he found the opinions "unpersuasive because Dr. Sullivan and Dr. Schaben provided no objective support for the opinions and they are inconsistent" with the medical evidence. Tr. 34. Specifically, the ALJ noted that records show "no evidence of distractibility" and instead show "normal attention and concentration, in addition to many other normal findings." Tr. 34. Second, the ALJ found that "the evidence a whole does not support the frequent absences," pointing specifically to Plaintiff's previous full-time work despite her migraines and other activities of daily living. Tr. 34.

The ALJ erred. As with Plaintiff's testimony, neither the objective medical evidence nor Plaintiff's work activity reasonably undermine the medical opinions. *See* Part I.B.–C. Moreover, Dr. Sullivan saw Plaintiff frequently throughout the relevant period, and Dr. Schaben had the benefit of access to Plaintiff's prior neurology records in addition to her own observations Plaintiff. Tr. 557. Finally, the medical opinions as to Plaintiff's frequent absences are supported by the record as a whole, which describes migraines twenty times per month, severe pain, difficulty sleeping to the point that she struggled with work, and no successful medications or treatments. Tr. 377, 415, 472, 557, 555, 725, 759. Accordingly, the ALJ erred in his analysis of the medical opinions of Dr. Sullivan and Dr. Schaben.

///

///

### III. Lay Witness Testimony

Plaintiff argues that the ALJ erred in rejecting the testimony of Tyler Reeser, the principal at the school where Plaintiff last worked. Tr. 263. On January 30, 2020, Mr. Reeser wrote a letter about Plaintiff's work while under his supervision from 2015 to 2019. Tr. 263. During this time, Mr. Reeser "noticed her migraines progressively getting worse[,] result[ing] in many absences, the need to constantly use heat pads, [and] take breaks in the health room to gather the strength to finish her days." Tr. 263. He also noticed that she would come to work exhausted "as a result of needing to go to the emergency room for pain relief." Tr. 263. According to Mr. Reeser, towards the end of her time working at the school, Plaintiff's "migraines worsened to the point that she decided to resign her position since she was constantly dealing with a high level of pain." Tr. 263.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's

testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

Here, the ALJ failed address the letter from Mr. Reeser. In his letter, Mr. Reeser described work limitations stemming from Plaintiff's migraines. Specifically, Mr. Reeser describes frequent absences from work and the need to take frequent breaks. It also provides support for Plaintiff's testimony as to the reason that she stopped working and the accommodations that Plaintiff was allowed during the final years she worked. Accordingly, the ALJ's failure to discuss Mr. Reeser's letter was harmful error.

## IV.   Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id*. at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020.  Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id.*  Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled.  *Id.*  To remand for an award of benefits,

each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The Court finds that a remand for payment of benefits is appropriate in this case. The first two parts of the Ninth Circuit's three-part test have been satisfied: the ALJ failed to provide legally sufficient reasons for rejecting evidence, and the record—which consistently shows Plaintiff's struggles with frequent, debilitating migraines—is fully developed. Plaintiff testified and reported to doctors that she experiences twenty migraines per month, which largely occur at night and are not responsive to treatment. As described by Plaintiff and her former supervisor, these migraines cause frequent absences; require unscheduled, unpredictable breaks; and inhibit her ability to work. Both of Plaintiff's providers opined that her headaches would cause her to miss more than four days of work per month and she would be off task more than 25% percent of the time. The Vocational Expert testified that this level of absenteeism and distraction from work would not allow for competitive employment. Tr. 66–67. Thus, when crediting as true Plaintiff's testimony, the lay witness testimony, and the medical opinions of Dr. Sullivan and Dr. Schaben, the ALJ would be required to find Plaintiff disabled.

///

///

///

///

///

///

19 – OPINION & ORDER

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED:_____June 23, 2023_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge
